CLARK v. BRADLEY.

*(Supreme Court, General Term, Fifth Department. October 21, 1892.)*

1. EXECUTORS AND ADMINISTRATORS—CLAIM FOR BOARD AND CARE OF DECEDENT.
    In an action against an executor to recover compensation for board and care of decedent, the evidence showed that plaintiff's husband, (decedent's son,) for 24 years after he became of age, remained at home, and served his father without compensation except his board and clothes; that decedent then gave said son $3,299, with which a home was purchased in plaintiff's name; that afterwards decedent successively tried to live with two daughters, but after a few months returned to the home of plaintiff and her husband, because his daughters did not want him, and charged more for his board than he was willing to pay; that decedent afterwards remained with plaintiff until his death; that he paid nothing for his board and care during his lifetime, and made no provision for such payment by will. There was also evidence from which the referee found that plaintiff expected to receive, by will or otherwise, and decedent expected to pay, a reasonable compensation for board and care. *Held*, that there is no presumption that the amount received from decedent by plaintiff's husband, and given to her, was to be considered as compensation for future board and care, rather than for past services, and plaintiff should recover.

2. PLEADINGS—REGULARITY OF AMENDMENT—WAIVER.
    Where a complaint was amended after reference, with notice to defendant, but without objection, on appeal from a judgment on the merits it is too late to raise the question that the amendment was irregular, or without jurisdiction.

Appeal from special term, Erie county.

Action by Hannah Clark against George H. Bradley, executor of Cyrus Clark, deceased. From an order entered in Orleans county, setting aside the report of a referee, order of confirmation, and judgment thereon, and granting a new trial, plaintiff appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*J. H. White,* for appellant. *L. M. Sherwood,* for respondent.

DWIGHT, P. J. The claim referred was for eight years' board, lodging, etc., of the defendant's testator, Cyrus Clark, deceased, from April, 1882, until his death in June, 1890; also for the keeping of horses of the deceased during a portion of that time. The plaintiff was the wife of the testator's son, Milton Clark, who married her in the year 1870, when he was 33 years of age. He had up to that time always lived at home, rendering service to his father on his farm, without other compensation than his support. Immediately upon his marriage, he took his wife home to his father's house on a farm belonging to the latter, known as the "Bates Farm," in the town of Ridgeway, where they lived as members of the father's family, rendering service and receiving support as such, without expectation of giving or receiving compensation for either, until the farm was sold in the spring of 1882. At that time Milton hired a house in the same town, to which he removed with his wife, and went to housekeeping. His father went with him, and remained a member of his family at that place, until the spring of 1883. In the spring of 1883 the plaintiff bought the interest of the other heirs of her father in a farm which they had inherited in common with her, paying therefor or thereon the sum of $3,299, which she had received from her husband under the following circumstances: In the spring of 1869, Cyrus Clark, the deceased, sold a farm in the town of Yates, taking back a purchase-money mortgage of $14,000 payable in 14 annual installments of $1,000 each. He assigned his interest in this mortgage to the extent of $12,000. Default was made in the payment of some of the later installments of the $12,000, and an

action of foreclosure was instituted in 1879 by the owner of those installments, to which Cyrus Clark, as the owner of the remaining $2,000, was made a party. When the sale took place, Cyrus Clark was sick, and he sent Milton to bid in the property, directing him to do so in his own name. This Milton did, and took a referee's deed of the farm, paying the amount of his bid by giving a mortgage on the same property, and his father afterwards gave him a quitclaim deed of the farm for a nominal consideration. Milton sold the farm in 1881, subject to the mortgage he had given, and realized therefrom the sum of $3,299, which was the same money he gave to his wife, and which she paid on the farm known as the "Whitaker Farm," purchased by her. She took and retained the title to that farm in her own name, went onto it in the spring of 1883 with her husband, and managed it as her separate property, receiving its proceeds, and defraying the expenses of the family therefrom. Cyrus Clark also accompanied his son and daughter-in-law in their removal to the Whitaker farm, and continued with them as a member of their family until May, 1884, when he went to Chicago, to live with a daughter, Mrs. Rolfe, at that place. It was at about this time that the plaintiff gave to the deceased her promissory note for $130, payable in one year, for borrowed money, which remained unpaid at the time of his death, and which the referee allows, with interest, as an offset to the plaintiff's claim.

In respect to the period of 8 years and upwards next following the sale of the Bates farm, embracing the year when the family lived on the place hired by Milton, and the first year, and more, on the Whitaker farm, the referee finds that no agreement or understanding existed between the father and either Milton or his wife that the former should pay for his board; and that portion of the plaintiff's claim was not allowed by the referee. The old gentleman seems not to have been encouraged to remain with his daughter at Chicago. He afterwards reported that she declined to keep him unless he would pay her a dollar a day for his board, and he remained with her only until the last of September of the same year. He had, some years later, even less success in the attempt to find a home with another daughter, Mrs. Sherwood, who lived in Niagara county. He remained with her only a few days, and reported that she proposed to charge him five dollars a week, and was unwilling to keep him at all. It was on the 30th day of September, 1884, that the deceased returned from Chicago to his former home, and again took up his residence with his son and daughter-in-law on the Whitaker farm; and there he remained as a member of their family, with few and brief intermissions, until his death, in June, 1890. It is for his board, lodging, washing, and care during this period of 293 weeks at the price of $3 per week that the principal item of the plaintiff's claim was allowed by the referee. That allowance is based upon findings which embrace the facts above stated, and further facts, among others, as follows: "That there never was any express agreement between him [the deceased] and the plaintiff in regard to said board, washing, and care. * * * That upon his return from Chicago to the plaintiff's house in September, 1884, and resuming his residence in her family, he expected to pay plaintiff for his board and care a reasonable sum, provided she saw fit to charge him for the same, but expected it to be less than that charged by his daughters; and from the time he so returned to live with her the plaintiff expected to charge him such reasonable sum for his said board and care, and to be compensated therefor by will or otherwise; and at some time during the period he so lived with her she notified him of such intention, and of her expectation to receive compensation for the same, and he continued to live with her, and receive such board, services, and care after having been so notified. * * * That, in consequence of his age, his infirmities, and his untidy habits, it was unpleasant to care for him, and these conditions caused extra labor and attention. * * * That Cyrus Clark left a will, by which he gave no part of his property to Mil-

ton or to his wife, the plaintiff, but gave the whole of it to his daughters, Mrs. Rolfe and Mrs. Sherwood, and to two grandchildren, to be equally divided between them."

· A very careful review of the record before us on this appeal inclines us to the opinion that the disposition made of the case by the referee was just, and permissible under the law applicable to this class of cases. There was evidence tending to show a mutual understanding between the plaintiff and the deceased that at some time, and in some way, by testamentary provision or otherwise, she or her husband should be reasonably compensated for the expense of time and money to which they were subjecting themselves in his behalf during the period of nearly six years of his old age and final helplessness. It was during that period that he had successively made the experiment of living with his two daughters, and found it a failure, because they exacted from him more compensation than he could afford to pay. He could not reasonably expect that his daughter-in-law would do for him from motives of filial duty more than his own daughters were willing to do. But the suggestion is—and that, we think, is the real ground of opposition to the plaintiff's claim—that she had already been paid in advance for services rendered and expenses incurred in and about the care and maintenance of the deceased. The reference is, of course, to the concession, on the father's part, by means of which Milton was enabled to realize, out of property which belonged to his father, and so to present to his wife, the sum of money which she paid for the interest in the Whitaker farm purchased by her. But we do not regard the suggestion as controlling upon the main question of fact in this case. Granting that the arrangement was a concession by the old man to Milton, and of the value of the sum realized by the latter in the transaction, is there any presumption, under the circumstances of this case, that this was to be regarded as payment in advance for the care and maintenance of the father during the remainder of his life? Or is it not more reasonable to suppose that it was in recognition, and, in a manner, as compensation, for services already rendered by Milton and his wife to him. Milton became of age in 1858, and for 12 years after that time, and before his marriage, he served his father without compensation beyond his board and clothes and scanty spending money. He was married in 1870, and for 12 years after that time not only he, but his wife, also, rendered similar services for similar compensation only. It is not contended that either Milton or his wife could have recovered at law compensation for these 24 years of service, but it may well be suggested that when, at the end of that time, the father puts his son in the way of realizing a little over $3,000, and permits him to put it into property for the benefit of his wife, it is quite as likely to have been intended in recognition of the past as in provision for the future. In this view of the transaction, there was nothing in it which deprives the plaintiff of the benefit of the ordinary presumption of a contract on the part of the deceased to pay for the services rendered and expenses incurred by her in his behalf.

The allowance to the plaintiff of her claim for the keeping of horses of the deceased on her farm rests upon the same principle as that for the board and care of the deceased; but a question of practice is involved in the consideration of one of the items of this claim which requires to be noticed. The claim, as originally presented to the executor, while it specified the raising of three colts, did not include a charge for the keeping of the brood mare from which they were raised. After the claim as presented had been referred, the plaintiff applied to the court at special term, on notice to the executor, for leave to amend her claim in the respect mentioned. The order was granted without opposition, and notice of its entry was duly served on the attorneys of the defendant. No appeal was ever taken from the order, nor was any motion made to set it aside, but the parties went to trial on the claim as amended thereby. It seems to be now too late to object that the amendment

was irregular, or without jurisdiction, We think the report of the referee is well sustained, and that the plaintiff was entitled to its confirmation, and to judgment thereon. The order setting aside the report, order of confirmation, and judgment, and granting a new trial, should be reversed.

Order appealed from reversed, with costs. All concur.